UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————

KENITH A'GARD,

                    Plaintiff,              11 Civ. 1933 (JGK)

        - against -                         OPINION AND ORDER

ADA PEREZ, ET AL.,

                    Defendants.
———————————————————————

JOHN G. KOELTL, District Judge:

        The plaintiff, Kenith A'Gard, brings this action against

the following defendants: Superintendent Perez, Lieutenant Buys,

Sergeant Candidus, Corrections Officer Sanin, Director of

Special Housing Units/Inmate Disciplinary Program Prack, former

Deputy Commissioner Leclaire, and Commissioner Fischer

(collectively, "the defendants").[1]  Each of the individual

defendants is or was an employee of the New York State

Department of Corrections and Community Supervision ("DOCCS"),

and each is being sued in his or her official and individual

capacities.  The plaintiff, a pro se inmate, claims that his

rights under the First, Fifth, and Fourteenth Amendments of the

United States Constitution were violated when he was subjected

to discipline for breaching prison regulations relating to the

───────────────────

[1] The plaintiff has also sued, as a "John Doe" defendant, his
assistant at his Tier III Superintendent's Hearing.  That
individual has not been served, and therefore the claims against
him are dismissed.  See Fed. R. Civ. P. 4(m).

possession of certain Uniform Commercial Code ("UCC") materials. The plaintiff claims that the regulations are unconstitutional and that his disciplinary proceeding violated his right to due process.[2]  He brings this action pursuant to 42 U.S.C. §§ 1983 and 1985.  He also alleges that the defendants violated several provisions of the New York State Constitution.   Each defendant now moves to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1)[3] and 12(b)(6) of the Federal Rules of Civil Procedure, respectively.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.

---

[2] To the extent that the plaintiff also made a claim based on an allegedly false misbehavior report, that claim has been abandoned because the defendants moved to dismiss the claim and the plaintiff did not attempt to defend the claim.  See, e.g., Collins v. Goord, 581 F. Supp. 2d 563, 579 (S.D.N.Y. 2008). Moreover, the filing of a false misbehavior report does not constitute the denial of a constitutional right.  See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

[3] Defense counsel clarified at argument that the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is directed solely at the plaintiff's state law claims.  The Court will consider whether to exercise supplemental jurisdiction over the state law claims after considering the federal claims.  See 28 U.S.C. § 1367(c)(3).

See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## II.

The following facts are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.

In October 2010, the plaintiff was an inmate incarcerated at the Downstate Correctional Facility. (Am. Compl. at 2.) On October 20, 2010, pursuant to Sgt. Candidus's instruction, Officer Sanin searched the plaintiff's cell and found UCC paperwork. (Am. Compl. at 2.) On October 21, 2010, Officer Sanin issued the plaintiff a Tier III Misbehavior Report for violations of the following DOCCS Standards of Inmate Behavior

("DOCCS Standards"): 113.30[4] (Possession of Unauthorized UCC

Materials); 107.21[5] (Unauthorized Lien); 106.10[6] (Refusing a

Direct Order), the charge for which was eventually dismissed;

and 180.11[7] (Correspondence Violation).  (Am. Compl. at 2.)  The

---

[4] DOCCS Standard 113.30 provides: "An inmate shall not possess any Uniform Commercial Code (UCC) Article 9 form, including but not limited to any financing statement (UCC1, UCC1Ad, UCC1AP, UCC3, UCC3Ad, UCC3AP, UCC1CAd), correction statement (UCC5) or information request (UCC11), whether printed, copied, typed or hand written, or any document concerning a scheme involving an inmate's 'strawman,' 'House Joint Resolution 192 of 1933,' the 'Redemptive Process,' 'Acceptance for Value' presentments or document indicating copyright or attempted copyright of an inmate's name absent prior written authorization from the superintendent."  (Harben Decl. Ex. K.)

[5] DOCCS Standard 107.21 provides: "An inmate shall not file or record any document or instrument of any description which purports to create a lien or record a security interest of any kind against the person or property of any officer or employee of the Department, the State of New York or the United States absent prior written authorization from the superintendent or a court order authorizing such filing."  (Harben Decl. Ex. K.)

[6] DOCCS Standard 106.10 provides: "AN INMATE SHALL OBEY ALL ORDERS OF DEPARTMENT PERSONNEL PROMPTLY AND WITHOUT ARGUMENT." N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2 (2009) (capitalization in original).

[7] DOCCS Standard 180.11 provides: "An inmate shall comply with and follow the guidelines and instructions given by staff regarding facility correspondence procedures pursuant to requirements of departmental Directive Nos. 4422 and 4421 (7 NYCRR Parts 720 and 721)."  N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2 (2009).  7 NYCRR 720 provides, in relevant part: "Inmates shall not conduct . . . business while under the custody of the department . . . .  Violation of this policy by an inmate may result in disciplinary action . . . ."  Id. at § 720.3(k) (2009).  7 NYCRR 720 also provides, in relevant part: "Any UCC Article 9 form, including but not limited to any financing statement" is "contraband."  Id. at § 720.4(d)(7) (2009).

plaintiff alleges that the copy of the DOCCS Standards ("Rule Book") he received did not contain DOCCS Standards 113.30 or 107.21 stapled into it as an addendum. The plaintiff concedes, however, that other inmates told him about the prohibition relating to UCC materials and that he saw that the addendum was stapled into other inmates' rule books. (Harben Decl. Ex. D at 14-15.) Prior to the search at issue in the Amended Complaint, the plaintiff had requested permission to possess the UCC documents but he had not received a response. (Harben Decl. Ex. D at 17, 20.)

On October 22, 2010, Officer Sinisi served the plaintiff with the Tier III Misbehavior Report written by Officer Sanin. (Am. Compl. at 2.) Prior to a disciplinary hearing known as the Superintendent's Hearing, the plaintiff was appointed a Tier III Assistant (defendant "John Doe") to assist the plaintiff with obtaining materials helpful to the plaintiff's defense at the hearing. (Am. Compl. at 2.) The plaintiff requested that inmates Dudley and Shafer testify as witnesses because they were housed in cells neighboring the plaintiff's cell, but ultimately they did not testify. (Am. Compl. at 2; Harben Decl. Ex. D at 6.)

Lt. Buys conducted the plaintiff's Tier III Superintendent's Hearing, which concluded on November 3, 2010. (Am. Compl. at 2.) The plaintiff was found guilty of violating

the DOCCS Standards 113.30, 107.21, and 180.11, and he was given

an eighteen-month term of confinement in the Special Housing

Unit ("SHU"), with a corresponding loss of packages, commissary,

and telephone privileges.  (Am. Compl. at 3.)  On administrative

appeal, the disciplinary term was reduced to six months in the

SHU and a corresponding loss of privileges.  (Am. Compl. at 3.)


**III.**

Each defendant now moves to dismiss the Amended Complaint

for failure to state a claim upon which relief can be granted,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.


**A.**

The plaintiff argues that the defendants deprived him of

his constitutional rights, in part by disciplining him pursuant

to allegedly unconstitutional prison regulations.  In

particular, the plaintiff has challenged the constitutionality

of DOCCS Standards 113.30 and 107.21.[8]  (Am. Compl. at 27-28,

Causes of Action 30-33.)  To the extent that the plaintiff is

alleging that the regulations restricted his ability to study

---

[8] The plaintiff has not specifically challenged the
constitutionality of DOCCS Standard 180.11 relating to facility
correspondence procedures.

and learn the laws of the United States in violation of his
constitutional right of access to the courts, that allegation
fails.  "The Constitution guarantees prisoners meaningful access
to the courts and . . . reasonable access to a law library is a
required part of that access." Shepherd v. Fraisher, No. 96
Civ. 3283, 1999 WL 713839, at *4 (S.D.N.Y. Sept. 14, 1999)
(citations omitted).  "To state a claim for denial of access to
the courts . . . a plaintiff must allege that the defendant took
or was responsible for actions that hindered [a plaintiff's]
efforts to pursue a legal claim." Davis v. Goord, 320 F.3d 346,
351 (2d Cir. 2003) (citations and internal quotation marks
omitted).

Here, the plaintiff has not plausibly alleged that the
prison's prohibition on his possession or use of UCC materials
unconstitutionally restricted him from studying and learning the
laws.  The plaintiff had the ability to study and learn the laws
of the United States, including those set forth in the UCC, by
accessing the prison's law library.  In fact, the plaintiff
indicated that he did visit the law library and communicated
with the law librarian.  (Harben Decl. Ex. D at 5, 22, 36, 37.)
The plaintiff has also failed to allege plausibly that the DOCCS
Standards otherwise violated his right of access to the courts.
The plaintiff has not alleged sufficient facts to support a
plausible claim that the defendants, by prohibiting the

possession of UCC materials, somehow hindered his efforts to pursue a legal claim.  Thus, the plaintiff has failed to state a plausible claim that the DOCCS Standards unconstitutionally restricted his ability to study and learn the laws or otherwise violated his right to access to the courts.

Moreover, a prison regulation impinging on inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  Prison administrators are not required to use the least restrictive means possible to further legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 411 (1989).  Rather, the Supreme Court "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."  Id. at 408 (citation omitted).

The DOCCS Standards that the plaintiff challenges here are reasonably related to legitimate penological interests.  See Turner, 482 U.S. at 89.  Standard 113.30 prohibits the possession of certain UCC forms, and Standard 107.20 prohibits the filing or recording of documents purporting to create liens against public officials.  These regulations are not overly restrictive, especially given that an inmate could obtain an exception with the prior written authorization of the

superintendent.  Together, the regulations prevent inmates from engaging in harassing tactics against public officials while allowing legitimate activities for inmates with official permission.

The Court of Appeals for the Third Circuit has rejected constitutional challenges to Pennsylvania prison regulations similar to the New York DOCCS Standards at issue here.  See Monroe v. Beard, 536 F.3d 198, 207-09 (3d Cir. 2008); Edmonds v. Sobina, 296 Fed. App'x 214, 217-18 (3d Cir. 2008) (per curiam). Monroe and Edmonds, which both rejected § 1983 due process claims pertaining to prison regulations restricting UCC materials, explained that such regulations satisfy the Turner test.  See Monroe, 536 F.3d at 207-09; Edmonds, 296 Fed. App'x at 217-18.  In addition, the District Court for the Northern District of New York recently rejected a similar constitutional challenge to the New York DOCCS Standards relating to UCC materials.  See Neree v. O'Hara, No. 09 Civ. 802, 2011 WL 3841551, at *8 (N.D.N.Y. July 20, 2011) (Report and Recommendation), adopted, 2011 WL 3841553 (N.D.N.Y. Aug. 29, 2011).

Like the Pennsylvania regulations upheld by Third Circuit Court of Appeals, the New York DOCCS Standards satisfy the Turner test because they are "reasonably related to [the correction agency's] interest in protecting government officials

from fraudulent liens." Monroe, 536 F.3d at 208 (citation omitted).  The regulations are drafted to address the nationwide problem of prisoners filing fraudulent liens against public officials.[9]  See id.  "[A]ccommodating [inmates' asserted] right to possess these [UCC] materials may encourage them to harass, intimidate or threaten prison officials, including guards and administrators, by threatening to file liens." Id. at 209. "Given that New York inmates are legitimately restricted in engaging in business activities from prison, substantially limiting the circumstances under which the possession of UCC forms would be allowed is reasonable and appropriate." Neree, 2011 WL 3841551, at *8 (footnote omitted).  The DOCCS Standards at issue here satisfy the Turner test because they are reasonably related to legitimate penological interests. Therefore, the plaintiff has failed to assert a plausible claim that DOCCS Standards 113.30 and 107.21 are unconstitutional.


**B.**

      In addition to his challenge to the substantive regulations, the plaintiff makes three procedural due process

---

[9] The Monroe court also noted that prisoners have been subjected to criminal prosecution for the impermissible use of UCC liens. Monroe, 536 F.3d at 208 (citing United States v. Joiner, 418 F.3d 863 (8th Cir. 2005) (affirming judgment of conviction against defendant-inmates for conspiracy to injure judicial officers in their property through the filing of UCC liens)).

arguments: first, the plaintiff allegedly failed to receive notice of the applicable DOCCS Standards; second, the Tier III Superintendent's Hearing was allegedly conducted in a way that deprived the plaintiff of procedural due process; and, third, the plaintiff's SHU confinement allegedly violated his due process rights.

### 1.

First, the plaintiff alleges that he did not receive notice of DOCCS Standards 113.30 and 107.21.  Due process requires "proper notice to an inmate of disciplinary rules in some fashion."  Neree, 2011 WL 3841551, at *9 n.12 (citing Frazier v. Coughlin, 850 F.2d 129, 130 (2d Cir. 1988)).  In this case, it is clear that the plaintiff received ample actual notice of the applicable prison regulations.  Although the plaintiff claims that the Rule Book he received did not contain DOCCS Standards 113.30 and 107.21 stapled into it as an addendum, he concedes that other inmates told him about the prohibition relating to UCC materials, that he saw that the addendum was stapled into other inmates' rule books, and that prior to the search he had requested permission to possess the UCC documents but had not received a response.  (Harben Decl. Ex. D at 14-17, 20.) Therefore, the plaintiff had actual notice of the applicable

DOCCS Standards but nonetheless possessed UCC materials in violation of those regulations.

In his Amended Complaint, the plaintiff argues that the defendants did not adhere to the procedures provided in the "Notice to Inmate Population" ("Notice"), which required that an inmate found in possession of a prohibited UCC document first be given a direct order not to possess such a document before disciplinary sanctions could be imposed.[10]  (Harben Decl. Ex. B.) However, the defendants point out that this Notice was no longer in effect in October 2010 because superseding regulations, Standards 113.30 and 107.21, were implemented by DOCCS in July 2009 and were codified into law later that year.  (Harben Decl. Ex. K; Rondeau Decl. Ex. D.)  Unlike the Notice, these new

---

[10] The Notice provides, in relevant part:

> Effective immediately, the unauthorized possession of any Uniform Commercial Code (UCC) documents or forms by an inmate is prohibited and these items will be confiscated. If any inmate believes that he or she has a legitimate need for access to UCC forms or publications, the inmate may apply in writing for authorization from the Superintendent. If an inmate is found to be in unauthorized possession of any document prohibited by this memorandum, the document will be confiscated and the inmate will be given a direct order not to attempt to possess or file such document. Thereafter, if the inmate is found in possession of such document or attempts to file such document without prior approval of the Superintendent, that inmate may be subjected to disciplinary sanctions and possible criminal prosecution.

(Harben Decl. Ex. B.)

regulations did not require that the plaintiff be given an order prior to sanctions.

In any event, any violation of notice requirements in prison regulations would not provide a basis for a § 1983 claim. Whether prison regulations--such as a specific form of notice-- were followed precisely is not a basis to conclude that any constitutional rights have been violated.  See Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985).  Any alleged violations of prison directives or regulations do not give rise to a federal claim, because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process."  Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (citations omitted); see also Hyman v. Holder, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. March 15, 2001).

**2.**

Second, the plaintiff alleges that the Tier III Superintendent's Hearing failed to comply with the requirements of due process.  Under certain circumstances, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary

actions taken." <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004)
(citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-67 (1974)).  Here,
the plaintiff has failed to state a claim that he was denied any
of the procedural protections set forth in <u>Wolff</u>.  The plaintiff
was provided notice of the charges against him; he had an
opportunity to call witnesses and present evidence at his
hearing; Lt. Buys served as a fair and impartial hearing
officer; and there was a written statement of the disposition
setting forth the evidence relied upon and the reasons for the
disciplinary actions taken.

      While the plaintiff alleges that his proposed inmate
witnesses improperly did not testify, Lt. Buys found that they
both signed written refusals to testify at the plaintiff's
hearing.  (Harben Decl. Ex. I.)  Moreover, the plaintiff has
failed to make any plausible allegations that these witnesses
would have any evidence relevant to the charges against him.
The plaintiff's asserted reason for calling these inmates as
witnesses was that they were housed in cells neighboring his own
cell and watched him speak to Officer Sanin on the day of the
search.  (Am. Compl. at 2.)  However, the plaintiff does not
explain why these inmates might have any relevant evidence,
especially given that he does not deny possessing the prohibited
UCC materials in his cell.  (Harben Decl. Ex. D at 11.)

The plaintiff additionally asserts that the defendants violated his due process rights and obstructed his First Amendment right of access to the courts by "maliciously delet[ing] testimony of his witnesses" from the hearing transcript.  (Pl.'s Letter to the Court dated Sept. 20, 2012, at 1-3; Pl.'s Letter to the Court dated Sept. 24, 2012, at 1.) Although the hearing transcript illustrates that the transcriber was unable to record all of the words spoken at the hearing, the transcriber did certify that the transcript was a "true and accurate record of the proceedings." (Harben Decl. Ex. D at 43.)  Apart from pointing out this incompleteness, the plaintiff has failed to allege sufficient facts to support a plausible claim that the defendants maliciously deleted the testimony of his witnesses from the hearing transcript.  See Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 570.  The plaintiff has also failed to explain how any missing testimony would alter his own admissions that he possessed the prohibited UCC materials.

Following its opinion in Wolff, "the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" Sira, 380 F.3d at 69 (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)).  However, "[t]his standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the

disciplinary ruling." <u>Sira</u>, 380 F.3d at 69 (quoting <u>Friedl v.</u>
<u>City of New York</u>, 210 F.3d 79, 85 (2d Cir. 2000)) (emphasis in
original).

Here, there is plainly sufficient evidence--surpassing the
"some evidence" standard--to support Lt. Buys's finding that the
plaintiff violated DOCCS Standard 113.30, which prohibits the
possession of certain UCC forms.  Prison officials found
prohibited UCC materials in the plaintiff's cell, and the
plaintiff does not deny that they were his.  (Am. Compl. at 2.)
The plaintiff admits that he knew about the prohibition and that
prior to the search he had requested permission to possess the
UCC documents, but he does not claim to have received such
permission.  (Harben Decl. Ex. D at 14-17, 20.)  Thus, by his
own admission, the plaintiff was in breach of Standard 113.30.

There was also sufficient evidence to support Lt. Buys's
finding that the plaintiff violated DOCCS Standard 180.11, which
requires inmates to comply with facility correspondence
procedures.  Among the plaintiff's confiscated materials was
correspondence, including an affidavit of service, which
appeared to indicate that the plaintiff had served lien notices
on a district attorney and a judge.  (Harben Decl. Ex. H.)  This
correspondence provides some evidence that the plaintiff was in
possession of contraband correspondence.  Therefore, there was

sufficient evidence to support Lt. Buys's finding that the plaintiff violated Standard 180.11.

Moreover, there was some evidence to support Lt. Buys's finding that the plaintiff violated DOCCS Standard 107.21, which prohibits inmates from filing any document purporting to create a lien or record a security interest against a government official.  Here, the plaintiff possessed in his cell documents relating to filing liens against a district attorney and a judge.  (Harben Decl. Ex. H.)  The documents, which explicitly state that the plaintiff had already served lien notices on these government officials, was evidence that the plaintiff was in the process of attempting to file such liens.  Because serving lien notices against government officials "constitutes a step in a course of conduct which would result in" a violation of Standard 107.21, the plaintiff's actions would be punishable under the DOCCS Standards.[11]  (Defs.' Suppl. Mem. Supp. Mot. Dismiss Ex. A.)  Therefore, the confiscated documents relied on

---

[11] 7 NYCRR 270 provides, in relevant part: "Inmates involved in attempts . . . to violate institutional rules of conduct . . . will be punishable to the same degree as violators of such rules.  Inmates may be cited for attempts . . . whether or not the text of an actual rule contains such terms."  N.Y. Comp. Codes R. & Regs. tit. 7, § 270.3(b) (2009).  "Attempt" is defined as "[a]ny act which constitutes a step in a course of conduct which would result in an act of misbehavior."  Id. at § 270.3(b)(1).

at the hearing provide some evidence to support Lt. Buys's finding that the plaintiff violated DOCCS Standard 107.21.

**3.**

Third, the plaintiff alleges that his confinement in the SHU violated his due process rights.  "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to [certain] further liberty deprivations . . . ."  <u>Sira</u>, 380 F.3d at 69 (citations omitted).  "The Supreme Court's decision in <u>Sandin</u> made clear that a prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  <u>Sealey v. Giltner</u>, 197 F.3d 578, 583 (2d Cir. 1999) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).  "[T]here can be no 'violation' of procedural due process requirements unless the confinement meets the atypicality standard of <u>Sandin</u>."  <u>Sealey</u>, 197 F.3d at 586.

In this case, the plaintiff originally was given an eighteen-month term of confinement in the SHU, with a corresponding loss of packages, commissary, and telephone

privileges.  (Am. Compl. at 3.)  Then, on administrative appeal, the plaintiff's disciplinary term was reduced to six months in the SHU and a corresponding loss of privileges.  (Am. Compl. at 3.)  The plaintiff alleges that his 180-day SHU confinement created an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," concluding that "a confinement longer than an intermediate one (more than 100 days), and under normal segregation conditions, is a significant departure from the ordinary incidents of prison life to require procedural due process protections."[12]  (Am. Compl. at 20, Twentieth Cause of Action.)

However, even if the plaintiff's SHU confinement deprived him of a liberty interest because it imposed an "atypical and significant hardship" on him, the plaintiff has failed to allege that his liberty was denied without due process.  Meeting the Sandin threshold would only establish that a liberty interest was involved, not that the plaintiff's liberty interest was

---

[12] With respect to the Sandin standard, the Second Circuit Court of Appeals "advise[s] the district courts of this Circuit that in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days, development of a detailed record will assist appellate review." Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000) (footnote omitted). "[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (citing Howard, 215 F.3d at 231-32 & n.5).

denied without due process.  Here, the plaintiff's SHU
confinement resulted from a Tier III Superintendent's Hearing,
at which the requirements of due process were satisfied.
Therefore, the plaintiff has failed to state a plausible claim
that his SHU confinement violated his due process rights.

### C.

The plaintiff also alleges that he was denied equal
protection because he was "treated different from similarly
situated prisoners" when prison officials did not give him a
warning before confiscating the prohibited UCC materials.  (Am.
Compl. at 25, Twenty-Eighth Cause of Action.)  However, the
plaintiff's allegation appears to be grounded more accurately in
due process rather than in equal protection because he is
challenging the procedural propriety of his discipline.  In any
event, on their face, the DOCCS Standards that were in effect in
October 2010 did not require a prior warning.  Furthermore, the
plaintiff's allegation that he was denied equal protection is
wholly conclusory, because the Amended Complaint states no facts
demonstrating that the plaintiff was treated differently from
similarly situated inmates who violated prison regulations.  See
Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 570.
Accordingly, the plaintiff has failed to state a claim for
denial of equal protection.

**D.**

The defendants assert that the claims against the supervisor defendants--Leclaire, Fischer, Perez, and Prack--should be dismissed because they had no personal involvement in the alleged deprivation of the plaintiff's constitutional rights.  A plaintiff must plead the personal involvement of each defendant in a violation of § 1983.  "There is no respondeat superior liability in § 1983 cases."  Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

The law in this Circuit before Iqbal was that a plaintiff may state a claim against a supervisory defendant in a § 1983 case when the plaintiff alleges that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

22

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).  However, courts in this Circuit are divided over the question of how many of the so-called Colon factors survive in the wake of Iqbal.  Compare Martinez v. Perilli, No. 09 Civ. 6470, 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he five Colon categories still apply after Iqbal."), with Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's muster--a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.").

The Second Circuit Court of Appeals has not addressed the question directly, but it has indicated that at least some of the Colon factors other than direct participation remain viable. See Rolon v. Ward, 345 F. App'x 608, 611 (2d Cir. 2009) ("A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others."); see also Scott v. Fischer, 616 F.3d 100, 108-09 (2d Cir. 2010). Moreover, it remains the case that "there is no controversy that

allegations that do not satisfy any of the <u>Colon</u> prongs are insufficient to state a claim against a defendant-supervisor." <u>Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.</u>, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011).

With respect to Fischer and Leclaire, the defendants assert that they had no personal involvement because they simply promulgated prison regulations.  (Mem. Supp. Defs.' Mot. Dismiss at 14.)  The plaintiff alleges that Fischer and Leclaire--as Commissioner and Deputy Commissioner, respectively--issued regulations and memos such as the "Notice to Inmate Population" and violated the plaintiff's rights by improperly supervising prison personnel in accordance with such memos.  (Am. Compl. at 18-19, Eighteenth and Nineteenth Causes of Action.)  However, the plaintiff has failed to state a claim that the applicable DOCCS Standards are unconstitutional, and the plaintiff's main claims are grounded in due process with respect to his discipline.  Because Fischer and Leclaire were not personally involved in the plaintiff's discipline, the claims against these two defendants are dismissed for lack of personal involvement.

With respect to Perez and Prack, the defendants assert that they had no personal involvement because they simply reviewed disciplinary sanctions.  (Mem. Supp. Defs.' Mot. Dismiss at 14.) The plaintiff alleges that he sent Superintendent Perez a copy

of the § 1983 "Notice of Liability" he had sent to Lt. Buys, in which Superintendent Perez was also implicated, and that she had the opportunity to reverse or dismiss the guilty disposition but never responded. (Am. Compl. at 3.) However, "[i]t is well settled in the Second Circuit that mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." Smith v. Masterson, No. 05 Civ. 2897, 2006 WL 2883009, at *13 (S.D.N.Y. Sept. 29, 2006) (citing Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (dismissing claims against DOCS Commissioner where his personal involvement was limited to receiving two letters from plaintiff)). Because the plaintiff only alleges that Superintendent Perez did not respond to his letter, the claims against her are dismissed for lack of personal involvement. The plaintiff also alleges that Director Prack had personal involvement because Director Prack reviewed Lt. Buys's findings and the plaintiff's subsequent appeal. (Am. Compl. at 3, 15.) However, the plaintiff has failed to state a claim that the discipline violated his due process rights. Because there was no due process violation in the plaintiff's discipline, the claims against Director Prack must also be dismissed.

**E.**

The defendants also assert that even if the plaintiff has sufficiently stated a cause of action against the defendants, they are nevertheless entitled to qualified immunity.  Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted); see, e.g., Iqbal, 556 U.S. at 671-72.  Even where a plaintiff's rights are clearly established, qualified immunity protects a government official "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."  Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citations omitted).  An official may satisfy the objective reasonableness test if he demonstrates that "'officers of reasonable competence could disagree' on the legality of the defendant's actions."  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, defendants Fischer, Leclaire, Candidus, Sanin, and Perez are entitled to qualified immunity because it was objectively reasonable for them to believe their actions were lawful.  Commissioner Fischer and Deputy Commissioner Leclaire issued prison regulations that reasonable officials would

believe were reasonably related to legitimate penological
interests.  Sgt. Candidus and Officer Sanin conducted the search
of the plaintiff's cell in a manner that was consistent with the
prison regulations.  Superintendent Perez supervised the
facility's activities in accordance with established procedures.
Because it was objectively reasonable for Fischer, Leclaire,
Candidus, Sanin, and Perez to believe their actions were lawful,
these five defendants are entitled to qualified immunity.

Lt. Buys and Director Prack are also entitled to qualified
immunity because it was objectively reasonable for them to
believe their actions were lawful.  The plaintiff's confiscated
documents included lien notices against government officials.
(Harben Decl. Ex. H.)  The documents appeared to constitute some
evidence that the plaintiff violated DOCCS Standards 113.30,
107.21, and 180.11.  Moreover, "[t]he qualified immunity
standard 'gives ample room for mistaken judgments' by protecting
'all but the plainly incompetent or those who knowingly violate
the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting
Malley, 475 U.S. at 341).  While the plaintiff disputes whether
the evidence was sufficient to find that he violated those
regulations, it was objectively reasonable for Lt. Buys and
Director Prack to conclude that there was sufficient evidence,
and qualified immunity protects their judgment.  Because it was
not objectively unreasonable for Lt. Buys and Director Prack to

believe that their actions were lawful, they are both entitled to qualified immunity as well.

**F.**

Additionally, to the extent that the defendants are being sued in their official capacity for damages, such claims are barred by the Eleventh Amendment.  The Eleventh Amendment bars from federal court all suits by private parties against a state unless the state consents to such a suit or Congress has validly abrogated its immunity.  See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363-64 (2001); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984).  It is well settled that Congress did not abrogate the Eleventh Amendment in enacting § 1983.  Quern v. Jordan, 440 U.S. 332, 340-42 (1979).

"Actions against state officials are also barred by the [Eleventh] Amendment where the relief granted would bind the state or where the state is the real party in interest." Russell v. Dunston, 896 F.2d 664, 667 (2d Cir. 1990) (citing Pennhurst, 465 U.S. at 101).  The state is the real party in interest when a state officer is sued in his or her official capacity.  See Kentucky v. Graham, 473 U.S. 159, 155-56 (1985).

Thus, the Eleventh Amendment bars any claims for damages against the defendants in their official capacity.[13]

## G.

The plaintiff further alleges that the defendants "conspired to deprive plaintiff of" his constitutional rights in violation of 42 U.S.C. § 1985(3).  (Am. Compl. at 11, Additional Cause of Action.)  "To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must allege (1) some racial or other class-based discriminatory animus underlying the defendants' actions, and (2) that the conspiracy was aimed at interfering with the plaintiff's protected rights."  Porter v. Selsky, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003), aff'd, 421 F.2d 141 (2d Cir. 2005) (citations omitted).  "Conclusory allegations of conspiracy are not sufficient to state a claim under § 1985."  Porter, 287 F. Supp. 2d at 187 (citation omitted).  Here, the plaintiff's allegations of conspiracy are merely conclusory, and they make no mention of the "racial or other class-based discriminatory animus" required for a § 1985 conspiracy claim.  Id.

---

[13] Moreover, state officials cannot be sued in their official capacity for damages because such officials are not "persons" under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (citations omitted)).

Accordingly, the plaintiff has failed to state a claim for a violation of 42 U.S.C. § 1985.

## IV.

The plaintiff's state law claims purportedly mirror his federal claims and are based on alleged violations of his rights under the New York State Constitution.  (Am. Compl. at 6-28.) Because all of the plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims and dismisses them without prejudice.  See 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998).

### CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss the plaintiff's federal claims is **granted** and those claims are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims and those claims are dismissed without prejudice.  The Clerk is

directed to enter judgment dismissing this case.  The Clerk is

also directed to close this case and all pending motions.

     SO ORDERED.

Dated:    New York, New York
            January 26, 2013

                                       John G. Koeltl
                       United States District Judge